**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois  60604**

Argued January 26, 2005
Decided April 11, 2005

**Before**

Hon. FRANK H. EASTERBROOK, *Circuit Judge*

Hon. KENNETH F. RIPPLE, *Circuit Judge*

Hon. TERENCE T. EVANS, *Circuit Judge*

No. 04-1257

| | |
|---|---|
| RUDINA SHKEMBI,<br>  *Petitioner*, | Petition for Review of an Order of the<br>Board of Immigration Appeals |
| *v.* | No. A 77 840 780 |
| ALBERTO R. GONZALES,[*]<br>  *Respondent*. | |

**ORDER**

Rudina Shkembi is a native and citizen of Albania who entered the United States in July 1999 without being admitted or inspected by an immigration officer. She requested asylum and withholding of removal the next year, claiming persecution on account of her political opinion.  After a hearing, an immigration judge (IJ) concluded that Shkembi was not credible and, even if she were, that she failed to offer sufficient evidence that she was persecuted in the past or had a well-founded fear of being persecuted in the future on account of her political opinions if she returned to Albania.  We deny Shkembi's petition for review because we agree with the IJ that she failed to prove her case.

Shkembi was born in 1970 when the Communist Party controlled Albania. Her family was forced to live in what she called a "concentration camp" because her

---

[*]Pursuant to Federal Rule of Appellate Procedure 43(c), we have substituted Alberto Gonzales for John Ashcroft as the named respondent.

grandfather was an outspoken critic of communism. The Communist Party ruled Albania for the early years of Shkembi's life, until a multi-party political system was put in place in the 1980s. *See* U.S. Department of State, *Background Note: Albania* (October 2004), http://www.state.gov/r/pa/ei/bgn/3235.htm (last visited March 31, 2005). In 1992 Sali Berisha, who was the leader of the Albanian Democratic Party, became the country's first democratically elected president. Elections in June 1997 brought the Socialist Party to power, and they remain in power today. *See* U.S. Department of State, *Albania Profile of Asylum Claims and Country Conditions* (2001); *see also Comollari v. Ashcroft*, 378 F.3d 694, 696 (7th Cir. 2004).

Shkembi bases her claim of past persecution and fears of future persecution on four separate incidents. The first two occurred while the Democratic Party was still in power. In August 1994 Shkembi attended a rally for the Democratic Party. When she stood up at the rally to criticize the party, the police arrested her. Shkembi explains that they "did not want anyone to say bad things about the democratic party." Shkembi was detained for 24 hours and hit on the legs, knees, and chest with rubber sticks and warned that if she continued protesting she would be put in jail. Shkembi did not testify about the severity of the beating, the extent of her injuries, or whether she required any medical care.

Shkembi's second encounter with the police was in 1996. On May 5, the day in Albania when the country honors its heroes and martyrs, she joined a group of 25-30 people who were demonstrating. Shkembi was there to protest that two of her uncles, who were killed by communists, were omitted from the government's official list of heroes and martyrs. Shkembi testified that the police first threatened to arrest the protestors and then began to hit them, including her, with sticks. Shkembi was arrested and held at the police station for eight hours but was not charged with an offense. She did not testify that she was hit or otherwise mistreated at the station.

Shkembi described a third incident that occurred in October 1998, when the Socialist Party was in control of the government. Shkembi was walking home to her apartment one evening when she heard a gunshot and saw that a window in her building had been shattered. She testified that she also "heard some voices saying that Rudina Shkembi this is what you deserve." When questioned about who she thought was responsible, she responded vaguely that it was the government:

> The same people from the socialist party, the same people that were the communist party were again in, in the government, and governing the country so I was again one of the people (indiscernible), amongst the people in their list, so they wanted to eliminate me.

She also said: "All the people that were against the government, they had on their lists, so they knew what they were doing against the government and they had their names." When asked to explain her statement that she was on a list, she offered a vague explanation. She claimed that she participated in large scale riots earlier that year, and, even though she was never arrested during them, that the police might have seen her and identified her as an opponent of the government.

Shkembi described a fourth and final incident that occurred before she fled Albania. She said that about two weeks after the gunshot incident she was stopped in Tirana by "two plain clothes people" who told her that if she didn't stop her "activity" she was going to be "eliminate[d] . . . physically." She testified that she thought they were police officers, but did not explain why. Shkembi said that she left Albania shortly thereafter because she thought that her life was in danger.

In addition to testifying about her experiences, Shkembi submitted some documentary evidence: a membership booklet of the Association of Formerly Politically Persecuted and records to prove that she had been arrested twice. But an expert testified and called the validity of the documents into question. The IJ found the expert to be credible and discounted the documentary evidence as possibly fabricated.

Based on Shkembi's submission of questionable documents as well as other factors, the IJ concluded that she was not credible. In addition he said that even if Shkembi was detained in 1994 and 1996 as she testified, the incidents were minor and did not rise to the level of persecution; Shkembi had not demonstrated that she was seriously harmed by the police or that she needed medical care. On the issue of future persecution, the IJ said that Shkembi had not provided sufficient evidence or explanation of why she would be viewed as an opponent of the Albanian government and thus the target of political persecution. Shkembi appealed, and the Board of Immigration Appeals affirmed without a separate opinion.

In this court Shkembi attacks the IJ's credibility determination, and raises some doubt that it was well-reasoned. For example, she points out that the questionable documents undermined her credibility even though IJ never made a finding that Shkembi knew the documents were false. *See Kourski v. Ashcroft*, 355 F.3d 1038, 1039-40 (7th Cir. 2004) (negative credibility finding warranted only if person knew or should have known that documents were false).

But the IJ also reached an alternative conclusion that she failed to prove her case, and Shkembi barely addresses that part of the IJ's decision. She suggests without support in her brief that the beating she endured "rose way above the level of mere harassment," that the persecution she endured was on account of her political opinion, and that the "pattern of intimidation was worsening."

We will overturn the IJ's determination that Shkembi's experiences with the police did not rise to the level of persecution only if we are compelled to reach an alternative conclusion. *Dandan v. Ashcroft*, 339 F.3d 567, 572 (7th Cir. 2003). Actions must rise above the level of harassment to constitute persecution. *Id.* at 573. "Multiple incidents create a more compelling case," *id.*, but petitioners still must prove that the beatings were severe. Petitioners often prove the severity of a beating by testifying about the extent of their injuries. *See id.* at 574 ("We do not hold that lost teeth or broken bones are the *sine qua non* of persecution, but these specifics indicate the severity of the beating and support its claim to be considered persecution.").

Although Shkembi contends on appeal that her experiences rose above harassment, she never provided testimony to support that conclusion. Her first detention lasted 24 hours and during it she was hit on her body with rubber sticks. She did not offer any details about the severity of the beating, and, as the IJ noted, she did not describe her injuries. The second detention lasted only 8 hours, and Shkembi did not testify that she was mistreated during it, though she did say that officers hit her when she was apprehended. In a recent case, we held that the evidence did not compel a finding of persecution when the petitioner claimed that he was stopped and interrogated several times, detained once for 24 hours, and beaten once, causing an injury to his hands. *See Prela v. Ashcroft*, 394 F.3d 515, 517-18 (7th Cir. 2005). Shkembi's reports likewise do not compel a finding of persecution.

On the issue of future persecution, the IJ concluded that Shkembi failed to prove a well-founded fear of future persecution because she didn't explain why she would have been identified as an opponent of the Albanian government. Shkembi claims that she "continually expressed her political views that each successive regime was not fulfilling its promises to the people" and that her activism took the form of attending demonstrations and affiliating with the Association of the Formerly Politically Persecuted. But her activism at demonstrations occurred when the Democratic Party was in power, and she has never provided a sound explanation of why the current socialist government would view her as an opponent based on her criticism of the Democratic Party. As far as her membership in the Association of Formerly Politically Persecuted, she has never explained why her membership amounts to a political statement or implies a particular political opinion. In her brief she says, without citation to the record, that "the organization is dedicated, among other things, to having those killed by the Communists recognized as martyrs." But according to the record, the government maintains a list of people who were formerly politically persecuted, and even purports to grant benefits to the families of people on the list. *See* U.S. State Department, *Albania: Profile of Asylum Claims and Country Conditions* (2001), (explaining that the government promises benefits to formerly politically persecuted individuals, but no government since 1992 has fulfilled its promises). Shkembi has not explained why

a government that maintains an official list of persecuted people would target her for joining an organization that seeks to have individuals added to that list.  We recognize that there may be an explanation, but it was Shkembi's burden to fill in the gaps in her story.  The IJ's conclusion that Shkembi failed to prove that she has a well-founded fear of being persecuted in the future on account of her political opinion is supported by the record.

One final matter deserves mention.  At argument counsel asserted: "If there's a ten percent chance that someone will return to his own country and has a basis for an objective fear . . . they are entitled to a grant of political asylum."  Counsel cited *INS v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987), in support of his proposition.  We are not sure what counsel meant to suggest with this statement, but in the context of the argument we understand him to assert that Shkembi needed to show only a ten percent chance that any persecution she might face would be on account of her political opinion.  In *Cardoza-Fonseca*, the Supreme Court did say that a petitioner may have a well-founded fear of persecution if there is only a ten percent chance that he will be persecuted.  *Id.*  By way of example, the Court pointed out that if a government is executing one out of every ten adult males, a petitioner will be able to show that his fear of persecution is "well-founded."  *Id.*  But petitioners still must prove that any persecution they fear would be "on account of" one of the grounds listed in the act.  *See* 8 U.S.C. § 1101(a)(42).  The *Cardoza-Fonseca*  Court was not focusing on this element, and its example should not be interpreted to excuse petitioners from proving it.  Shkmebi certainly has not proven that the Albanian government persecutes one out of ten political opponents, and neither has she proven that the government has reason to identify her as a political opponent.

Because the  conclusion that Shkembi failed to prove that she was subjected to past persecution or that she has a well-founded fear of future persecution on account of a ground listed in the act is supported by substantial evidence, we deny her petition for review.